UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOE J. BALTAS, on behalf of himself and all others similarly situated; | : | CIVIL ACTION NO. |
| | : | |
| KENYON L. JOSEPH-CASTELLANO, on behalf of himself and all others similarly situated; | : | _____ |
| | : | |
| NICHOLAS A. CHIAPPONI, on behalf of himself and all others similarly situated; Plaintiff(s) | : | |
| | : | |
| V. | : | |
| | : | |
| ANGEL QUIROS, COMMISSIONER, In his Individual & Official Capacities; | : | |
| | : | |
| WILLIAM MULLIGAN, DEPUTY COMMISSIONER, In his Individual & Official Capacities; | : | |
| | : | |
| SHARONDA CARLOS, DEPUTY COMMISSIONER, In her Individual & Official Capacities; | : | |
| | : | |
| EULALIA GARCIA, DIRECTOR, In her Individual & Official Capacities; | : | |
| | : | |
| MICHAEL REGAN, DIRECTOR, In his Individual & Official Capacities; | : | |
| | : | |
| NICHOLAS RODRIGUEZ, DISTRICT ADMINISTRATOR, In his Individual & Official Capacities; | : | |
| | : | |
| JESUS GUADARRAMA, WARDEN, In his Individual & Official Capacities; Defendant(s) | : | A JURY TRIAL IS HEREBY DEMANDED |

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

PRELIMINARY STATEMENT

1. This is a Class Action Complaint brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First, Eighth and Fourteenth Amendments of the United States Constitution. This Action seeks Declaratory and Injunctive Relief on behalf of Connecticut State Prisoners in the Custody of the Commissioner of Corrections in Connecticut Prisons. This Action alleges the Defendants are knowingly and intentionally depriving the Plaintiff's of Rights secured by the United States Constitution and imposing Unconstitutional

customs, practices, policies and restrictions without legitamit penalogical purpose.

## JURISDICTION

2. The Court has Juridction over this Action that arises from the United States Constitution and Laws of the United States seeking redress from the deprivations of Plaintiffs Civil Rights imposed under color of state law, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1367(a).

3. This Court has Jurisdiction to Grant Declaratory Relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as Fed.R.Civ.P. 57.

## VENUE

4. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because the parties are residents of Connecticut and the events giving rise to the Causes of Action described herein occured in Connecticut.

## PARTIES

5. The First named Plaintiff, Joe J. Baltas, was at all times relevant to this Action a State Prisoner in the custody of the Commissioner of the Connecticut Department of Corrections ("DOC") with a Prisoner ID # 339650 and is a citizen of Connecticut. He is a middle aged White male of Italian and Native American decent who has been incarcerated since 2006 and is serving an effective life sentence. He has been housed at all Level 4 (Max Security)[1] facilities in Connecticut and is currently housed at Walker CI in Suffield, CT.

6. The Second named Plaintiff, Kenyon L. Joseph-Castellano, was at all times relevant to this Action a State Prisoner in the custody of the Commissioner of the Connecticut DOC with a Prisoner ID # 207827. He is a 50 year old Black male who has been incarcerated muiltiple times in Connecticut prisons since 1991 and housed in all Level 3 (Medium Security)[2] and Level 4 (Max Security) facilities in Connecticut and is currently housed at Walker CI in Suffield, CT. He is a Connecticut Citizen.

7. The Third named Plaintiff, Nicholas A. Chiapponi, was at all times relvant to this Action a Pre-Trial Detainee in the custody of the Commissioner of the Connecticut DOC with a Prisoner ID # 448045 and is a citizen of Connecticut. This is his fist incarceration and he is currently housed at the Walker CI in Suffield, CT.

---

[1] Level 4 facilitzer include MacDougall Walker CI, Cheshire CI, Garner CI, & Corrigan CC.

[2] Level 3 facilities include Somers, Enfield, Carl-Robinson, New Haven, Hartford, Bridgeport, etc.

8. The First named Defendant, Angel Quiros, was at all times relevant to this Action the Commissioner of the Connecticut ("Conn") DOC and is the legal custodian and legally responsible for all prisoners in his custody and care. He is sued in his Individual and Official Capacities.

9. The Second named Defendant, William Mulligan, was at all times relevant to this Action the Deputy Commissioner of Operations and Rehabilitative Services of the Conn DOC and is legally responsible for the Operations of the facilities and the Rehabilitative programs, treatments, recreational services, educational services and custody and care of all prisoners in the Conn DOC. He is sued in his Individual and Official Capacities.

10. The Third named Defendant, Sharonda Carlos, was at all times relevant to this Action the Deputy Commissioner of Administration of the Conn DOC and is legally responsible for the Fiscal Services and Budget of the Conn DOC. She is sued in her Individual and Official Capacities.

11. The Fourth named Defendant, Eulalia Garcia, was at all times relvant to this Action the Director of Programs and Treatment for the Conn DOC and legally responisble for the Community Release, Education, Recreational Services, Rehabilitative Services, Prorgams and Treatment, and Religous Services and operations of the Conn DOC and the Prisoners access to such services. She is sued in her Individual and Official Capacities.

12. The Fifth named Defendant, Michael Regan   , was at all times relevant to this Action the Director of Fiscal Services for the Conn DOC and legally responsible for the Fiscal Operations and Budget of the Conn DOC. He is sued in his Individual and Official Capacities.

13. The Sixth named Defendant, Nicholas Rodriguez, was at all times relvant to this Actions the District Administrator for District 1 of the Conn DOC and legally responsible for the operations of the facilities and the custody and care of the prisoners in the facilities and supervision of subordinate staff in his District. He is sued in his Individual and Official Capacities.

14. The Seventh named Defendant, Jesus Guadarrama, was at all times relevant to this Action the Warden of the MacDougall-Walker Correctional Institutions, and legally responsible for the custody and care of the prisoners housed therein and the operations and services of his facility. He is sued in his Individual and Official Capacitites.

15. All named Defendants were Officials of the state of Connecticuts Department of Corrections and all acted under Color od Law and Color of their Authority as State Officials under State Law.

## CAPACITY OF DEFENDANTS

16. All Defendants are sued in their Individual and Official Capacities.

## PREVIOUS LAWSUITS

17. The named Plaintiffs have not brought any other Action in either State or Federal Courts dealing with these same facts or circumstances.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. Pursuant to the Prison Litigation Reform Act, codified under 42 U.S.C. §1997e(a) all named Plaintiffs have exhausted all available administrative remedies in accordance with Conn DOC Administrative Directive ("AD") 9.6 - Administrative Remedies.

## STATEMENT OF FACTS

19. It has been established by the United States Supreme Court that entertainment, as well as political and ideological speech, the watching of motion pictures and programming broadcast on radio and television all fall within the protections guaranteed by the First Amendment of the U.S. Constitution.[3]

20. Likewise it is well established by the United States Supreme Court that the U.S. Constitution protects the Right to receive information and ideas.[4]

21. These Constitutional protections and Rights extend to prisoners, as prisoners are not stripped of Constitutional protections at the prison gate, and retain all the Rights of ordinary citizens except those taken expressly by law.[5]

22. The Right to entertainment, watch movies and programs broadcasted on television as well as the Right to receive information and ideas, news, educational information, interests, cultural information, political information, world news, evolvinig culture and standards of contemporary decency, and the freedom to pursue ones interests and happiness are protected by the First and Fourteenth Amendments of the U.S. Constitution and may not be prohibited or excluded without substantial sufficient government justification.

---

[3] see Schad v. Mt. Ehpraim, 452 US 61, 65-66 (1981); see also Gaskin v. Clarke, 2008 U.S.Dist.LEXIS 3150, at *5-6 (D.Mass. 2008)(holding "as a general matter, the right to watch movies is protected by the Firt Amendment," which is extended to prisoners. Though their can be restrictions, such as Rated R or X movies).

[4] see Stanley v. Georgia, 394 US 557, 564 (1969)(internal citations ommitted).

[5] see Procunier v. Martinez, 416 US 391 (1974); see also Bell v. Wolfish, 441 US 520 (1974).

23. Prisoners in Conn State Prisons have a Constitutional Right to entertainment and the receival of information and ideas through the watching of movies and broadcasted television programming.

24. The DOC authorizes Conn Prisoners to purchase and possess personal televisions which they retain in their personal possession for personal use in the confines of their private cells/living quarters.

25. All Level 4 (Max) prisons and cells within those prisons are already equipped with fully functioning and operational electrical outlets and cable outlets.

26. The Laws of the State through Statute, Regulation and through DOC Regulation have already authorized and allocated funds for the purchase and use of Cable &/or Satellite equipment and programming services, as well as programs and services for the benefit of the prison population, inclusive of, but not limited to:

   (a) Title 4a, Chpt 58 of the C.G.S. via Gen. Letter 71 §3d of the Department of Administrative Services has authorized the DOC with legislative intent to purchase "cable and satellite television equipment and services (excluding internet and telephone services).";

   (b) DOC Regulation AD 3.1 §1 provides the DOC "shall manage its budget and expenditures with appropriate annual plans consistent with governing State policies and guidelines," to wit, Gen. Letter 71 referenced above;

   (c) DOC Regulation AD 3.5 §1 provides the DOC "shall maintain a Correctional Welfare Fund. The fund shall be used for the benefit of inmates by purchasing goods and services that exceed those required for the basic care and custody of inmates";

   (d) DOC Regulation AD 3.6 §1 and 4(a) the DOC "shall" maintain and "Inmate Activity Fund" for the use and benefit of inmates through entertainment and recreational activites;

   (e) DOC Regulation AD 10.13 §1 provides the DOC shall conduct programming to motivate offenders towards positive behavioral change and succesful reintegration back into the community.

27. DOC Regulation AD 3.8 §19 permits the DOC to charge prisoners a 35% mark up on all commissary purchases, which the DOC allocates into their revenue and re-disburses into the budget, inclusive of the Correctional Welfare Fund and Inmate Activity Fund.

28. DOC Regulation AD 10.20 provides that the DOC operates the Correctional Enterprises of Connecticut inmate work force, wherein the DOC utilizes inmate work force to obtain a profit through the various operations and services of said CEC. Those profits are deemd Department/State revenue and allocated to the DOC budget, inclusive of the Inmate General Welfare Fund and Inmate Activity Fund.

29. DOC Regulation AD 3.10 §5 provides that any funds in the annual budget not used are considered "revenue" and not re-ditributed into the following years budget. Meaning any money in the funds allocated for inmate benefit that are not used are seized by the State as profit and the prisoner population loses said funds in their entirety,

inclusive of the funds they themselves contributed to the DOC budget for their benefit.

30. The Conn Prisoners and Plaintiffs have a property interest in the use of their funds and a Right to direct the allocation/disbursement of funds seized from them or that they contributed to the budget for their benefit and their recreational activites, programming and entertainment.

31. The DOC defines movies and TV programs as recreational activities that are an important component to effecting pro-social change."

32. The DOC and Defendants[6] have historically, for decades, provided premium cable services[7] to Level 3 and below facilities, without incident and with positive and beneficial results and affects, which the prison population of those lower level facilities have enjoyed freely.

33. The DOC and Defendants have historically for decades maintained a movie program funded by the Inmate Activity Fund, wherein facility personnel would purchase movies via VHS or DVD rated under "R" and play a different movie daily on an interfacility closed circuit channel that prisoners would watch from their cells.

34. In 2023 without incident or cause or legitamit penalogical justification the DOC and Defendants Terminated the movie program and ceased providing movie access to the prison population. They did not redistribute or allocate the funds previoulsy committed to the Movie Program, but instead left it unused annually and deem it revenue and seize said funds annually from the prisoner population. Though pursuant to AD 10.13 §9, a movie program is still authorized and on the books.

35. The DOC and Defendants have historically, for decades, maintained a cable/satellite contract at the Level 4 facilities paid for from the Inmate Activity &/or Welfare Funds, wherein they would utilize the institutional reciever and manually block all of the channels from the prison population. Based on Plaintiffs knowledge and belief that pre-existing contract was with Dish Network.

36. The DOC and Defendants have restricted, denied and deprived the Prison Population and Plaintiffs at Level 4 (Max) or above facilities, of their Constitutional Right to watch movies and TV Programming/broadcasts.

37. These denials and deprivations are without any legitamit penalogical interests.

---

[6] "Defendants" herein means all named Defendants collectively.

[7] "Premium Cable" herein means a cable &/or satellite programs/services package that provided a wide range of channels that included ABC, CBS, NBC, FOX, MSNBC, CNN, FOXNEWS, ESPNs, Discovery, History, NationalGeographic, A&E, BET, MTVs, CMT, Disney, Cartoon Ntwk, Comedy Central, AMC, FX, TNT, TLC, TBS, USA, SYFY, Food Network, HGTV, and so on.

38. Prisoners at Level 4 facilities are improperly limited and restricted to only those channels that are free and publicly broadcasted over digital airwaves that they receive via an antenna in the window of their cells, which is subject to the interferences from the weather and the electro-mechanial devices of the facility as well as the placement of their cell itself which impacts available signal, In sum, prisoners at Level 4 facilities have access to approx. 0-10 publicly broadcast free channels via eqipment they have to purchase and provide for themselves. This limitation of available broadcasting does not meet their Constitutional Rights, nor does it meet their infromational, educational, recreational, rehabilitative,or life needs. The available channels are not equal to those available to the prisoners of lower level facilities.

39. Prisoner assignment to Level 4 (Max) facilities is based on numerous and distinct factors. Prisoners are assigned to Level 4 Facilities for reasons inclusive of, but not limited to: soley based on their sentence being greater than 15 years or having over 2/3 of their sentence left to complete; soley based on seeking specific programs or work assignments only available at level 4 facilities; soley based on a need for level 4 mental health or medical treatment needs; soley based on seperation issues at other facilities; to accommodate local visitation of inmate families; soley as an accommodation for certain religious services only available at specified facilities; and an array of other causes that do not constitute any legitamit penalogical justification for any difference in treatment or deprivation of television programming and broadcasts or movie viewing.

40. Prisoners at all level prisons are managed according to the same standards for all general population prisoners/housing/statuses. There is no difference in treatment or restrictions based on the Level of facility or classification from 2-4 (level 1 is community release superivision).

41. The DOC and Defendants make no distinction in housing, treatment, custody or management between sentenced/convicted prisoners and pre-trial detainees. In all Conn DOC facilities sentenced prisoners and pre-trial detainees are housed togeather and their is no difference in treatment or management in any way.

42. Angel Quiros ("Quiros") is the COmmissioner of Corrections and the ultimate authority on the DOC budget and allocation of funds for prisoner activites and services and has personally made the decision to DENY prisoners in Level 4 Facilities access to Cable &/or Satellite television programming, and is personally responsible for the deprivation of the Right to watch movies and TV programming being imposed on the Plaintiffs as he has  personally ordered that deprivation and refused to cure it.

7

43. William Mulligan ("Mulligan") is the Deputy Commissioner of Operations and Rehabilitative Services and is responsible for ensuring prisoners receive the proper rehabilitative programming, treatment and care, as well as ensuring they recieve recreational activities. He is also respronisble for ensuring he and his subordinates protect and provide for prisoners Constituional Rights and he also is a reviewing authority of the DOC budget and allocation of funds for prisoner benefits. He is personally aware that prisoners are deprived of their Right to watch movies and television programming and has refused to cure that deprivation.

44. Sharonda Carlos ("Carlos") is the Deputy Commissioner of Administration and is responisble for overseeing fiscal services and the DOC budget and the allocation of funds for prisoner activites and recreational activites including movie programs and television programming and is personally resonsible for contracts with service providers such as cabel &/or satellite service providers. She is personally aware that prisoners are deprived of their Constituional Right to Wwatch movies and TV programs and that prisoners have sought the allocation of funds to provide said services which she has refused to provide or cure.

45. Eulalia Garcia ("Garcia") is the Director of Programs and Treatment and is responsible for devising rehabilitative program curriculums and recreational activity plans for the inmate popluation and is personally aware that Prisoners are being deprived of the their Constitutional Right to watch movies and TV programs, which she refuses to act to provide for or cure.

46. Micheal Regan ("Regan") is the Director of Fiscal Services and responsible for creating a DOC budget plan and allocation of funds to the benefit of prisoners, he then submits his budget plan to Defendants Garcia, Carlos, Mulligan and Quiros who review and authroize the DOC budget. He is personally aware that the prisoners are being deprived of their Constitutional Right to watch movies and TV programs and that they have sought allocation of their funds and the budget for their activites to be sourced to providing Cable &/or Satellite services, he has refused to act to provide the sought services or cure the deprivation.

47. Nicholas Rodriguez ("Rodriguez") is the District Administrator of District 1 and is responisble for the overseeing of the facilities, staff and prisoners in his District which include MacDougall-Walker and Cheshire CI as well as Level 3 and 2 facilities. He refers recommendations for rehabilitative programming and recreational services to Defendants Regan, Garcia, Carlos, Mulligan and Quiros and has the authority to take action to secure movie program services and telivision program services for the prisoners and Plaintiffs. He is personally aware that Prisoners are being deprived of their Constitutional Right to Watch movies and TV programs and refuses to act to cure.

48. Jesus Guadarrama ("Guadarrama") is the Warden of the MacDougall-Walker CI and is responsible for the rehabilitative programs and recreational programs available to Prisoners at his facility and the Plaintiffs and has the authority to secure movies and TV programming for Prisoners but refuses to do so and has personally ordered that prisoners be denied access to moives and TV programs via cable &/or satellite programming and has ordered channels blocked to deprive Plaintiffs of said access. Gudarrama is personally aware of prisoners being deprived oft their Constitutional Right to watch movies and TV Programming, and refuses to cure said deprivation.

49. Guadarrama also manages and controls the Administrative Segregation and Security Risk Group Programs and their management standards and has personally ordered prisoners housed on those statuses be denied possession of their personal televisions and any and all access to any movies and Television broadcasts of any kind.

50. There are ample funds in the DOC budget to provide for the benefit of the Prisoners Plaintiffs to provide them with cable &/or satellite televisoin programming services to afford them their Constitutonal Right to the same, which the Defendants refuse to provide and instead wilfully allow to go completely unused for any purpose to convert the funds specifically allocated by the State for those services into the DOC's Revenue.

51. The named Defendants all receive yearly bonuses based on the final annual Revenue for their divisions and have fraudulent financial incentive to deprive the prison population of their Constitutional Right to movies and television programming in order to improperly redistribute the funds allocated for said services into their own personal wealth.

52. All named Defendants have the ability and authority to act to cure the deprivations of Plaintiff/Prisoners Constitutional Right to watch movies and television programming and broadcasting, and have wilfully refused to do so.

53. DOC Correctional Officers and the Correctional Officers Union have also requested the Defendants provide premium cable services to the prison populaiton and facilities to serve the best interest of the population and climate of the facilities, as well as for themselves.

54. Premium cable programming provides a wide array of topical and informative as well as entertaining broadcasting that result in positive effects inclusive of, but not limited to:

   (a) wide variety of cultural specific and sentsitive programming that provides prisoners a mechanism of learning and understanding cultural differences that leads to being able to find common ground and avoid confrontations that arise over cultural differences which are of increased concern in this modern climate;

(b) wide variety of educational material that they are otherwise denied based on the nature of prisons and lack of meaningful resources, such as History channel programming, National Geographic programming, Discovery Channel programming, as well as many other informational programs that provide prisoners educational and informational sources they are other wise denied that they may use to better themselves such as programs that teach trades like carpentry, automotive maintenance, culinary arts, and so on;

(c) wide variety of news sources to provide information they would other wise be denied such as world news, CNN, MSNBC, FOXNews, and other such news programming that prisoners are denied depriving them of various news and political speech and information;

(d) various and wide ranging entertainment progrms for prisoners to seek the enjoyment of life as well as interest specific content they are otherwise denied as well as sensory stimuli which provides them a positive and meaningful way to spend their time rather than idleness which invariably leads to depreciation of cognitive functioning, psychiatric welness and often leads to psychiatric breaks and miscondcut;

(e) based on the ever evolving nature of society various premium cable programming also provides prisoners with their only source of familiarizing themselves with modern standards of societal and cultural acceptable behavior and conduct necessary for the succesful rehabilitatoin and reintegration into the community;

(f) and many other positive effects and results to numerous to name.

55. When prisoners are released back into the community after long term sentences and enter a world alien to the one they left, which they were not able to familiarize themselves with prior to that re-introduction because they were deprived of the only vehicle that would have afforded them that familiarization through television programs of the modern day, their chances for succesful reintegration into society dramatically decrease and their odds of reoffending dramaticaly increase, directly impacting the recidivism rate.

56. The deprivation of movies and premium cable programming serves no legitamit penological purpose and is infact contrary to penological interest and the public interest, as the deprivation results in a more volatile and violent and disruptive prison population, denies prisoners rehabilitation, deprives prisoners of their consitutional rights, and does not have any beneficial purpose to any party.

57. Conn DOC is in the minority of State Prison systems on this issue, over 40 State Prison systems as well as the Federal Prison System provide premium cable services to their prisoner population.

58. The deprivation of Plaintiffs Constitutional Right to watch movies and television broadcasted programs results in direct harm to the prison population and the Plaintiffs those harms are inclusive of, but not limited to:

(a) depriving and violating Plaintiffs Constitutional Right to Watch movies and television broadcast programming;

(b) depriving Plaintiffs of religous programming;

(c) depriving Plaintiffs of political speech, programming and information;

(e) depriving Plaintiffs of Educational and Informational programming;

(f) depriving Plaintiffs of News;

(g) depriving Plaintiffs of Rehabilitation and ability to succesfully return to the community;

(h) depriving Plaintiffs of sensory stimuli causing deterioration of their mental well being and stabability;

(i) depriving Plaintiffs of Cultural programming and cultural understanding which is the leading cause on institutional conflict and altercations;

(j) depriving Plaintiffs of African American specific programming;

(k) depriving Plaintiffs of minority specific programming;

(l) depriving Plaintiffs as well as non-english speaking prisoners of multi-lingual of language specific programming;

(m) depriving Plaintiffs of ability to succesfully reintegrate into the community and not reoffend or return to incarceration;

(n) depriving Plaintiffs of entertainment;

(o) resulting in mental anguish and harm and deterioration, self injurious behaviors, destructive behaviors, maladaptive behaviors and incidents, in conflicts amongst peers and physical injuries;

(p) dehuminization. When prisoners are removed from the outside world and unable to view the world through television broadcasts, they are denied their huminization and normilization, and the atrocities of prison existence become the norm.

58. Plaintiffs are acting Pro Se and entitled to liberal interpretatio nand liberla construction of this Complaint.

### FACTS SPECIFIC TO PLAINTIFF JOE J. BALTAS

59. Baltas is a middle aged white male of Italian and Native American decent with conservative political ideaology. He has been incarcerated since 2006 at the age of 18 and has been housed in all Level 4 and 5 facilities on general population statuses as well as Administrative Segregation, Chronic Discipline and Special Needs. He is personally familiar with all Level 4 facilities and has experianced the deprivation of access to movies and television programming at all said facilities inflicted on him by the named Defendants.

60. Baltas is an experianced litigator with a history of prison activism and will properly represent the interest of the Class and best interest of the Class.

61. Baltas is currently confined at Walker CI classified as a Level 4 prisoner, he is denied access to any premium cable programming or movies as described herein and is limited to only those 3 channels he receives via an antenna, which affords him no meaningful sensory stimuli, entertainment, movies, Native American culture of Religous specific content, not educational or informational content, no rehabilitative content, he has been so denied since his arrival at Walker in May 22, 2025 and was previously suffering this ongoing harm since 2006. He is also deprived all political content.

62. As a result of being denied the referenced television programming he has suffered severe isolation, sensory deprivation, anxiety, depression, deterioration of his cognitive functioning and mental wellness, and he has repeatedly engaged in self injurious and self destructive behaviors as a result of the deprivation and idleness.

63. Baltas is confined to his cell 23 hours per day and is serving a life sentence and will effectively spend the rest of his life in a small cell.

64. Baltas is deprived of any enjoyment of life or pursuit of happiness or wellness from the deprivation of movies and televison programming.

65. Baltas has previously been housed in several other states pursuant to involuntary interstate compacts inclusive of Massachussettes and Virginia which both provide premium cable programming and a movie program as described herein. Said programming resulted in positive effects including the enjoyment of life, education, regression of cognitive deterioration, decrease in mental illness effects such as anxiety and deprssion, and resulted in significant positive effects in the inmate population.

66. Baltas contributes hundreds of dollars to the DOC revenue and budget annually which are allocated to the Inmate Welfare Fund and Inmate Activity Fund.

67. Baltas filed numerous grievances and written complaints to Guadarrama, Rodriguez, Garcia, Regan, Carlos, Mulligan and Quiros seeking they provide movies and premium cable services and directing that he desired for the allocation of funds to be committed to said services. They expressly refused to take any curative action.

FACTS SPECIFIC TO PLAINTIFF KENYON L. JOSEPH-CASTELLANO

68. Joseph-Castellano is a 50+ year old black male with liberal political ideaology. He has been incarcerated numerous times since 1991 and has been confined at all Level 4 5 facilities as well as all Level 3 facilities and several Level 2 facilities, in general population as well as on various statuses inclusive of, but not limited to Administrative Segregation, Chronic Discipline, Security Risk Group, Special Needs and close custody. He has experianced the cable programming at lower level facilities as well as the deprivation of his access to movies and television programming at all Level 4 and 5 facilities.

69. Joseph-Castellano is an experianced litigator and prison activist and has a non-profit devoted to prison ctivism and social justice. He will properly represent the interest of the Class and best interest of the Class.

70. Joseph-Castellano is currently cinfined at the Walker CI classified as a Level 4 prisoner, he is denied all access to any premium cable or television programming as described herein and is restricted to only approx. 3 channels he recieves via antenna in his cell, which deprives him of any meaningful sensori stimuli, entertainment, religous specific content, political speech or content, news, educational or informational content, rehabilitative content, and has been so deprived since his arrival at Walker CI in Sept. 2024.

71. As a result of this deprivation he has suffered severe isolation, as he is confined to a cell 21 hours per day alone, severe sensori stimuli deprivation, mental anguish, depression, anxiety, deterioaration of his cognitive functioning and mental wellness, and self inhuries behaviors.

72. Joseph-Castellano is effectively denied any enjoyment of life from this deprivation in context with his prison confinement that deprives him of all other joys of llife.

73. Joseph-Castellano was previously housed out of state in Oregon from 2016-2024 wherein Oregon DOC had premium cable programming services, which resulted in beneficial and positive effects inclusive of, but not limited to enjoyment of life, educaiton and self betterment, rehabilitation, regression of cognitive deterioration, decrease in mental illness effects such as anxiety and depression and over aggressivity, and resulted in significant positive effects on the inmate population as a whole.

75. Joseph-Castellano contributes hundreds if not thousands of dollars to the DOC revenue annually that are allocated to the Inmate Welfare Fund as well as the Inamte Activity Fund.

75. Joseph-Castellano filed numerous Grievances and writtein Complaints to Guadarrama, Rodriguez, Regan, Garcia, Carlos, Mulligan and Quiros seeking they provide for his

Constituional Right to watch movies and television broadcasting, as well as directing that he desired for the allocation of funds he contributes to be designated for that purpose. They refused to take any curative action.

## FACTS SPECIFIC TO PLAINTIFF NICHOLAS A. CHIAPPONI

76. Chiapponi is a 28 year old white male of Polish and Italian decent and a practicing Muslim. He is a Pre-Trial detainee incarcerated since early 2024, this is his first incarceration and has been confined at the New Haven County CC and is currently confined at Walker CI on a Protective Custody status. He has experianced the deprivation of his Constitutional Right to watch movies and television programming since his incarceration in early 2024.

77. Chiapponi has no prior litigation history, but has made efforts to engage in prison activism and will properly represent the Class and best interest of the Class inclusive of all Pre-Trial detainees.

78. Chiapponi is currently housed in Walker CI as a Level 4 prisoner, he is denied access to any premium cable programming as described herein and is limited to the 3-5 channels he recieves via antenna, which deprives him of any religous content, political content, sensori stimuli, no educational or informational content, no rehabilitative content, and he has suffered this deprivation since his arrival at Walker CI in early 2024.

79. As a result if this deprivation Chiapponie is confined to a cell 21 hours a day to 24 hours a day suffering isolation, sensori stimuli deprivation, depression, anxiety, mental anguish, cognitive decline, and self injurious idealations and behaviors.

80. Chiapponi is deprived of any enjoyment of life or pursuit of happiness from the deprivation of his Right to watch movies and television programming in context with the denial of all other of lifes joys that he is denied from his detainement.

81. Chiapponi contributes hundreds if not thousands of dollars to the DOC revenue and Inmate welfare Fund and Inmate Activity Fund.

82. Chiapponi filed numerous grievances and written Complaints to Guadarrama, Rodriguez, Garcia, Regan, Carlos. Mulligan and Quiros regarding the denial of his right to movies and television programming, as well as directing his desire for the allocation of his funds to be committed to said services. All named Defendants expressly refused to take any currative action at all.

## FACTS SPECIFIC TO ALL NAMED DEFENDANTS

83. All namedDefendants were personally aware of the Deprivations described herein, all named Defendants received Plaintiffs grievances and complaints and denied said

grievances and complaints, and expressly refused to act in any way to cure the deprivation and violations described herein regarding the movie and television access.

84. All named Defendants had the authority and abilit to act in a way to cure the deprivations described herein.

85. All named Defendants did personally cuase the deprivation by refusing to provide the described television services and movie program and ordering that said services be denied tot he Plaintiffs and prison population.

## CLASS ACTION FACTS

86. Plaintiffs Baltas, Joseph-Castellano and Chiapponi bring this Action on behalf of themselves and others similarly situated, pursuant to Fed.R.Civ.P. 23(a) and (b).

87. The Plaintiffs seek to represent a Class consisting of:

> All Connecticut state Prisoners who are now, or will in the future be confined in a Level 4 or above State Prison &/or State Correctional Facility in Connecticut.

88. The members of the Class are too numerous, and the membership of the Class too fluid, to permit joinder of all members. There are currently approx. 6,500 + State Prisoners confined in Level 4 or above (Max Security) Prisons in Conn, wherein those prisoners are in constant flux daily. Such flux and fluidity include daily discharges back into the community or supervised release, daily new intakes, and daily transfers between facilities and different levels of custody.

89. Common questions of Fact and Law exist as to all Class members. All Class members are equally subjected to the Unconstitutional issues described in this Complaint. These common questions include, but are not limited to: Whether the Plaintiffs are subjected to the deprivation of a Constitutional Right to Movies, TV Broadcasting, Information, News, Ideas, Culture, Entertainment, Expression, Interest, and Pursuit of Happiness; Whether the Plaintiffs are subjected to Unconstitutional Infringement and Restrictions on this Constitutional Right without legitamit penalogical justification; Whether the Plaintiffs are subjected to the deprivation of necessary Rehabilitation and ability to succesfully Reintegrate into the Community subjecting them to the prospective recidivsm against their interst, the States interest and the Public interest; Whether the Plaintiffs are subjected to a deprivation of Equal Protection; and Whether the Plaintiff's are subjected to a Constitutional Deprivation and Discipline without due process and Unconstitutional Conditions of Confinement; and Whether Injunction should issue enjoining the Defendants from subjecting the prisoners in there custody from the Constitutional violations described herein.

90. The claims of the named Plaintiffs are typical of those in the Class.

91. The named Plaintiffs will fairly and adequately represent the best interest of the Class. The named Plaintiffs interests are consistent with those of the Class, and they have moved for the appointment of Counsel to aid in the representation of the Class.

92. The named Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making appropriate Final Injunctive Relief and Declaratory Relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE

1. Paragraphs 1-93 are hereby restated and made 1-93 of this Cause.
94. All named Defendants with full knowledge and intent through their actions &/or failures to act either individually &/or in concert under Color of law, statute, ordinace, regulation, custom and usage of the State of Conn, subjected and continue to subject the Plaintiffs to the deprivation of Rights secured by the U.S. Constitution and of the United States and State of Conn, to wit, Plaintiff's First and Fourteenth Amendment Right to the freedom of expression, receive ideas and information, News, Political information, Religous content, Cultural content, Multilingual content, and to view and observe motion pictures, and TV Broadcasting Programs as well as the fundamental Right to seek the enjoyment of life through such content and material.
95. Plaintiffs Seek Declaratory Relief.
96. Plaintiffs Seek Injunctive Releif Enjoining Defendants, their employees, agents, successors in office and all others acting in concert with them from depriving, infringing or restricting that Right further or in the future permanently; and to Order Defendants to provide the Cable &/or Satelite Television Services sought.
97. Plaintiffs Seek Compensatory and Punative Damages for the wilfull and intentional Deprivation of Rights secured and Protected under the U.S. Consitution.

### SECOND CAUSE

1. Paragraphs 1-97 of the First Cause are hereby restated and made 1-97 of this Cause.
98. All named Defendants with full knowledge and intent through their actions &/or failures to act either individually &/or in concert under Color of law, statute, ordinance, regulation, custom and usage of the State of Conn, subjected and continue to subject the Plaintiffs to the deprivation of Rights secured by the U.S. Constitution and of United States and State if Conn as well as direct violations of the interest of the State and the Public, to wit, the First, Eigth and Fourteenth Amendment Rights to seek ones betterment and rehabilitate and receive information to re-enter the community succesfully and associate with the publi and not re-offend.
99. Plaintiffs Seek Declaratory Relief.
100. Plaintiffs Seek Injunctive Relief Enjoining Defendants, their employees, agents, successors in office and all others acting in concert with them from depriving Plaintiffs

of the sought Cable &/or Satelite programming to educate and familiarize themselves with modern ideas and standards of cultural and contemporary standards of decency as well as information necessary to succesfully re-integrate into the community and to associate with the community.


## THIRD CAUSE

1. Paragraphs 1- 100 of the Second Cause are hereby Restated and made 1-100 of this Cause.

101. All named Defendants with full knowledge and intent through their actions &/or failures to act either individually &/or in concert under Color of law, statute, ordinance, regulation, custom and usage of the State of Conn, subjected and continue to subject the Plaintiffs to the deprivations of Rights secured by the U.S. Constitution and of the United States and State of Conn, to wit, the Plaintiff's First and Fourteenth Amendment Right to not be deprived of their Constitutional Rights and have their Rights infringed or Restricted without legitamit penalogical justification.

102. Plaintiffs Seek Declatory Relief.

103. Plaintiffs Seek Injunctive Releif Enjoining Defendants, their employees, agents, successors in office and all others acting in concert with them from unduly restricting and depriving them of access to the sought Cable &/or Satelite Programming and Services Sought herein.

104. Plaintiffs Seek Compensatory and Punative Damages for the wilfull deprivation and restriction and denial of Rights secured and protected by the U.S. Constitution without legitamit penalogical justification.


## FOURTH CAUSE

1. Paragraphs 1-104 of the Third Cause are hereby Restated and made 1-104 of this Cause.

105. All named Defendants with full knowledge and intent through their actions &/or failures to act either individually &/or in concert under Color of law, statute, ordinance, regulation, custom and usage of the State of Conn, subjected and continue to subject the Plaintiffs to the deprivations of Rights secured by the U.S. Constitution and of the United States and State of Conn, to wit, the Plaintiff's Fourteenth Amendment Right to Equal Treatment and Protection with similarly situated individuals, wherein the Defendants have treated Plaintiff's differently from their peers in lower level facilities by providing them Cable/Satelite Television services and programming and depriving Plaintiffs without legitamit penalogical purpose of process, but instead for an improper purpose.

**FIFTH CAUSE**

1. Paragraphs 1-105 of the Fourth Cause are hereby Restated and made 1-105 of this Cause.

106. All named Defendants with full knowledge and intent through their actions &/or failures to act either individually &/or in concert under Colow of law, statute, ordinance, regulation, custom and usage of the State of Conn. subjected and continue to subject the Plaintiffs to the deprivations of Rights secured by the U.S. Constitution and of the laws of the United States and the State of Conn, to wit, their Eigth and Fourteenth Amendment Rights under the U.S. Constitution to not be deprived of life, liberty or property and not be punished without due process of law, wherein the Defendants place Plaintiff's into disciplinary segregation and special management statuses and deprive them of all access to TV programming and services and the information, ideas, and content described herein.

107. Plaintiffs Seek Declaratory Relief.

108. Plaintiffs Seek Injunctive Relief Enjoining Defendants, their employees, agents, successors in office and all others acting in concert with them from depriving the Plaintiffs of TV broadcasting access when being placed in segregated statuses.

109. Plaintiffs Seek Compensatory and Punative Damages against the named Defendants for their wilfull and intentional deprivation of Rights secured by the U.S. Constitution.

**SIXTH CAUSE**

1. Paragraphs 1-109 of the Fifth Cause are hereby Restated and made 1-109 of this Cause.

110. All named Defendants with full knoweldge and intent through their actions </or failures to act either individually </or in conert under Coloe of law, statute, ordinance, regulation, custom and usage of the State of Conn subjected and continue to subject the Plaintiffs to the deprivations of Rights secured by the U.S. Constitution and of the laws of the United States and State of Conn, to wit, their Eigth and Fourteenth and Fourth Amendment Right to their property interest in their funds seized &/or controlled by the Defendants and used for improper purposes &/or misallocated or redistributed to their personal wealth in fraud. Such property interest violations also amount to an unlawful and excessive fine or punishment not authorized by their sentence in violation of the Eighth Amendment.

111. Plaintiffs seek Declaratory Relief.

112. Plaintiffs Seek Injunctive Relief Enjoining Defendants, their employees, agents, successors in office and all othes acting in concert with them from misallocating funds designated for their benefit, and Order Defendants to use said funds to secure the premium cable &/or Satellite services sought herein.

PRAYER  FOR  RELIEF

WHEREFORE, Plaintiffs Seek the Court to Certify this Action as a Class Action;

WHEREFORE, Plaintiffs Seek Declaratory Relief and the Court issueing a Finding Declaring the Issues Raised Herein as Unlawful &/or Violating the Plaintiff's Constitutional Rights;

WHEREFORE, Plaintiffs Seek Injunctive Relief Permanently Enjoining the Defendants, their Agents, Employees, Successors in Office and All Others Acting in Concert with them from Subjecting the Plaintiffs to the same Violations, Deprivations and Conditions Described Herein; and Ordering they Take Action to Provide the Cable &/or Satelite Television Services or Programming Sought Herein;

WHEREFORE, Plaintiffs Seek Compensatory Damages;

WHEREFORE, Plaintiffs Seek Punative Damages;

WHEREFORE, Plaintiffs Seek Costs of Suits;

WHEREFORE, Plaintiffs Seek Reasonable Attorneys Fee's and Costs Pursuant to 42 U.S.C. § 1988 and All Other Applicable Law;

WHEREFORE, Plaintiffs Seeks Any and All Other Relief Deemed Just and Equitable;

A JURY TRIAL IS HEREBY DEMANDED

Respectfully Submitted on Their Own Behalf & Those Similarly Situated Individuals, The Plaintiffs,

10/1/25
Date

Joe J. Baltas, Plaintiff
Walker CI
1153 East St. South
Suffield, CT 06080
CT #339650

10/1/25
Date

Kenyon L. Joseph-Castellano, Plaintiff
Walker CI
1153 East St. South
Suffield, CT 06080
CT #207827

10-1-25
Date

Nicholas A. Chiapponi, Plaintiff
Walker CI
1153 East St. South
Suffield, CT 06080
CT #448045

# V E R I F I C A T I O N

I hereby Verify and Declare under penalty of perjury pursuant to the Law of the United States and State of Connecticut that I have read the foregoing Complaint and the matters alleged therein are True and Correct to the Best of My Knowledge and Beleif.

Executed at Suffield, Connecticut, County of Hartford on this *1st,* day of October 2025.

Sworn,

10/1/25
_____
Date

_____
Joe J. Baltas

10/1/25
_____
Date

_____
Kenyon L. Joseph-Castellano

10-1-25
_____
Date

_____
Nicholas A. Chiapponi

21